**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

JORGE SPRAU,

                                        Plaintiff,

        v.                                                    Civ. No. 9:02-CV-0998
                                                                    (GLS)(RFT)
ROBERT J. MURPHY; P. GONYER;[1] T. BROSSEAU;
T. ROCQUE; T. MARLOW; J. RICHARDS,

                                        Defendants.

**APPEARANCES:**                                      **OF COUNSEL:**

JORGE SPRAU
Plaintiff, *Pro Se*
Upstate Correctional Facility
PO Box 2001
309 Bare Hill Road
Malone, New York 12953

HON. ELIOT SPITZER                                   DEBORAH A. FERRO, ESQ.
Attorney General of the State of New York            Assistant Attorney General
Department of Law
The Capitol
Albany, New York 12224

**RANDOLPH F. TREECE**
**U.S. MAGISTRATE JUDGE**

                        **REPORT-RECOMMENDATION and ORDER**

        Plaintiff Jorge Sprau brings this *pro se* civil action, pursuant to 42 U.S.C. § 1983, alleging

Defendants violated his constitutional rights while he was housed at Bare Hill Correctional Facility

and at Upstate Correctional Facility.  Dkt. No. 1, Compl.  Specifically, Sprau alleges that the

Defendants used excessive force against him in violation of his Eighth Amendment rights, denied

---

        [1] This Defendant's name is correctly spelled "Gonyea" not "Gonyer" and the Court will refer to him by his
correct spelling.  *See generally* Dkt. No. 51.

him due process in a disciplinary proceeding in violation of his Fourteenth Amendment rights, and

impeded his access to the grievance process in violation of his First Amendment rights. *Id.*

Presently before the Court is Defendants' Motion for Summary Judgment pursuant to FED.

R. CIV. P. 56(b).[2]  Dkt. No. 51.  Sprau opposes the Motion.  Dkt. Nos. 52-54.  For the reasons that

follow, it is recommended that the Defendants' Motion for Summary Judgment be **granted** in its

entirety and Plaintiff's entire Complaint dismissed.

## I.  BACKGROUND

### A.  Material Facts

The following material facts are uncontroverted.  Inmate Jorge Sprau is currently in the

custody of the New York State Department of Correctional Services (DOCS) serving an

indeterminate life sentence for criminal possession of a controlled substance in the first degree, a

concurrent sentence of 8 ⅓  to 25 years for criminal possession of a controlled substance in the

third degree, a consecutive sentence of 1 ½ to 3 years for criminal possession of a weapon in the

third degree,[3] and another consecutive sentence of 1 ½ - 3 years for promoting prison contraband in

the first degree.[4]  Dkt. No. 51, Defs.' 7.1 Statement at ¶ 1, App., Ex. D-1 (Crime and Sentence

Information).  At the time of the incident giving rise to Plaintiff's claims, Sprau was housed at the

Bare Hill Correctional Facility.  Defs.' 7.1 Statement at ¶ 2, App., Ex. D-1 (Locator System).

### 1.  The Underlying Incident

On October 18, 2001, Correction Officers Stubbs and Peacock were assigned to search

---

[2] This matter was referred to the undersigned pursuant to 28 U.S.C. § 636(b) and N.D.N.Y.L.R. 72.3(c).

[3] Sprau committed this crime while in DOCS' custody.

[4] This crime was also committed while in DOCS' custody on October 18, 2001.  The incident giving rise to this criminal charge, in addition to subsequent circumstances, is the basis for Sprau's instant civil action.

Sprau's cube for a weapon.[5]  Defs.' 7.1 Statement at ¶ 3, App., Exs. D-6 & D-16 (Misbehavior Report and Unusual Incident Report/Use of Force Report, respectively).  Officer Stubbs ordered Sprau to submit to a pat frisk, at which point Sprau stepped out of his cube, put his hand in his pocket, and ran for the inmates' bathroom, all the while ignoring direct orders to cease.  Defs.' 7.1 Statement at ¶ 4; Pl.'s 7.1 Statement at ¶ 4; Compl. at ¶ 6-15.  Officer Colombe,[6] who was at the officers' station when Sprau ran past him, and Officer Stubbs pursued Sprau into the bathroom stall.  Defs.' 7.1 Statement at ¶ 5; Pl.'s 7.1 Statement at ¶ 5.  The two officers saw Sprau throw something into the toilet.  Defs.' 7.1 Statement at ¶ 6; Pl.'s 7.1 Statement at ¶ 6.  The officers grabbed Sprau and struggled with them to prevent him from flushing what they saw to be a weapon, and what Plaintiff says was a letter to the DA, down the toilet.[7]  Defs.' 7.1 Statement at ¶ 7; Pl.'s 7.1 Statement at ¶ 7.  Eventually, Sprau successfully flushed the object.  Defs.' 7.1 Statement at ¶ 9; Pl.'s 7.1 Statement at ¶ 9.

In the interim, other officers were radioed to assist Officers Colombe and Stubbs; Defendant Sergeant Rocque responded to the emergency call.  Defs.' 7.1 Statement at ¶¶ 8 & 11. Under Defendant Rocque's supervision, Officers Charland and Rolland took Sprau in the rounds vehicle to the Special Housing Unit (SHU).  Defs.' 7.1 Statement at ¶ 12; Pl.'s 7.1 Statement at ¶

_____

[5] Neither Stubbs nor Peacock are named as Defendants in this action.  Thus, Plaintiff's assertion that he was only visited by CO Stubbs is immaterial to his § 1983 claims.  *See* Dkt. No. 52, Pl.'s 7.1 Statement at ¶¶ 3-4.

[6] Officer Colombe is not a Defendant in this action.

[7] The Officers claim Sprau threw a razor blade melted into a toothbrush handle, approximately six inches long, into the toilet.  *See generally* Defs.' 7.1 Statement, App., Ex. D-16.  Plaintiff avers that the object he sought to flush was a letter he wrote on October 17, 2001, to the District Attorney regarding the numerous instances of officer harassment he had been subjected to.  Compl. at ¶ 6-9.  He claims to have flushed this letter out of fear of retaliation.  *Id*.  Plaintiff attached a letter to his Complaint purportedly in support of this allegation.  The attachment is a letter from the Attorney General's Office in Rochester, New York, dated November 26, 2001, addressed to Plaintiff at Upstate Correctional Facility, referring to a November 20, 2001 letter, and stating that "your prior letter was received in this office."  Compl., Ex. A.  There is no indication of the content of the prior letter.

12.  While in the frisk room of SHU, Defendant Rocque questioned Sprau about the incident; Sprau insisted he flushed a letter to the District Attorney down the toilet.[8]  Defs.' 7.1 Statement at ¶ 13; Pl.'s 7.1 Statement at ¶ 13; Compl. at ¶¶ 6-15 & 6-17 to 6-20.  Sprau was thereafter strip frisked for contraband or weapons as is routine for inmates prior to entering SHU.[9]  Defs.' 7.1 Statement at ¶ 16; Compl. at ¶ 6-21.

Following the frisk, Plaintiff was examined by a registered nurse.  Defs.' 7.1 Statement at ¶ 17; Pl.'s 7.1 Statement at ¶ 17.  According to the medical report, Plaintiff had a superficial abrasion on the fourth finger of his left hand and a "superficial, barely visible, reddened area" on the medial aspect of his left bicep area, and no treatment was necessary.[10]  Defs.' 7.1 Statement at ¶ 18, App., Ex. D-16.  Following his examination, Plaintiff was photographed and then escorted to a SHU cell.  Defs.' 7.1 Statement at ¶¶ 19-20; Pl.'s 7.1 Statement at ¶¶ 19-20.  According to Plaintiff's Ambulatory Health Record (AHR), on October 19, 2001, Plaintiff complained of chest pain, pains in his back and neck, and bumps on his head as a result of the abovementioned altercation.  Defs.' 7.1 Statement at ¶¶ 21-22, App., Ex. D-3 (AHR entry 10/19/01).  Plaintiff was given ibuprofen, which was refilled on October 29, 2001.  Id.  Sprau's AHR does not indicate any further medical complaints until October 31, 2001, wherein he complained of insomnia and requested to see a

---

[8] In his Affidavit, Rocque recalls that, during his discussion with Sprau, Sprau claimed he flushed a "kite" down the toilet. Dkt. No. 51, Rocque Aff. at ¶¶ 5-6. According to Defendant Rocque, a "kite" is an unauthorized correspondence for an inmate, such as inmate to inmate correspondence, and, further, letters to or from a district attorney, or other public official, are not unauthorized but in fact are privileged. Id. at ¶¶ 7-8.

[9] Plaintiff asserts he was subjected, under Rocque's supervision, to beatings by unnamed correction officers. Compl. at ¶¶ 21-25.

[10] Plaintiff asserts the medical report is a forgery and should be excluded pursuant to FED. R. EVID. 803(8)(c), due to its "lack of trustworthiness." Pl.'s 7.1 Statement at ¶¶ 10 & 17; Dkt. No. 54, Pl. Aff. at ¶ 16. The nurse who examined Sprau is not a Defendant in this action.

psychiatrist.[11]  Defs.' 7.1 Statement at ¶ 23, App., Ex. D-3 (AHR entry 10/31/01); Compl. at ¶ 32.

*2. The Tier III Disciplinary Hearing–October 24, 2001*

Officer Stubbs wrote a misbehavior report, endorsed by Officer Columbe, that charged

Plaintiff with violating rules 107.10 (physical interference with employees), 115.10 (interfering

with frisk procedures), 106.10 (refusing direct order), 113.10 (possession of a weapon), and 104.11

(violent conduct).  Defs.' 7.1 Statement at ¶ 24, App., Ex. D-6 (Misbehavior Report); Pl.'s 7.1

Statement at ¶ 24.  Plaintiff asserts he was served with the report on October 20, 2001.  Compl. at

¶33.  A Tier III Hearing was held on October 24, 2001, with Defendant Captain Gonyea serving as

the Hearing Officer.  Defs.' 7.1 Statement at ¶ 25; Pl.'s 7.1 Statement at ¶ 25.  Plaintiff pled guilty

to all of the charges except for possession of a weapon.  Defs.' 7.1 Statement at ¶ 26, App., Exs. D-

7 & D-14 (Hearing Record Sheet and Transcript of Hearing, respectively); Pl.'s 7.1 Statement at ¶

26.

At the hearing, Gonyea offered Sprau the opportunity to present witnesses and evidence on

his behalf; he declined both invitations.  Defs.' 7.1 Statement, App., Ex. D-14 at (unnumbered) p.

7.  Defendant Gonyea requested that Officer Columbe testify at the hearing since he had co-signed

the Misbehavior Report.  Officer Columbe testified that he saw Sprau throw a green toothbrush

handle with a grip on one end and a metal object on the other into the toilet and that the officers

were unable to retrieve the weapon because Sprau had broken away from them and flushed it.

Defs.' 7.1 Statement at ¶ 27, App. Ex. D-14 at (unnumbered) pp. 8-10.

Based upon Plaintiff's guilty pleas, the misbehavior report, and the testimony of Officer

---

[11] As indicated in his AHR, Sprau has a history of insomnia complaints.  Defs.' 7.1 Statement at ¶ 23, App., Ex. D-3 (AHR entries 6/26/99, 7/6/99, and 11/21/99).  Plaintiff alleges his insomnia was caused by the recurring nightmares he had about the incident.  Compl. at ¶ 6-32.

Columbe, Plaintiff was found guilty of all of the charges and the penalty imposed was 365 days

SHU confinement, loss of packages, commissary, and phones, and, the recommended loss of 12

months good time.  Defs.' 7.1 Statement at ¶ 29; Pl.'s 7.1 Statement at ¶ 29; Compl., Ex. C.

Plaintiff appealed the Hearing Officer's decision alleging that the weapons charge was a "set up,"

that he was not in possession of a weapon, that the Hearing Officer relied on information outside

the misbehavior report, more specifically, information regarding Officer Stubb's broken fingers,

and, that reliance on such information "suggested lack of impartiality."  Defs.' 7.1 Statement at ¶

30, App., Ex. D-12 (Tier Hearing Appeal); Pl.'s 7.1 Statement at ¶ 30.  Defendant Gonyea's

decision was affirmed by Defendant Robert Murphy, Acting Director, Special Housing/Inmate

Disciplinary Program, and has not been overturned.  Defs.' 7.1 Statement at ¶¶ 31-32, App., Exs.

D-13 & D-1 (Appeal Decision and Disciplinary History, respectively); Pl.'s 7.1 Statement at ¶¶ 31-

32.

On March 6, 2002, Sprau was indicted for the events occurring on October 18, 2001, and

upon his plea of guilty, was convicted of promoting prison contraband and was thereafter

sentenced by a state court to 1 ½ to 3 years imprisonment.  Defs.' 7.1 Statement at ¶ 1, App., Ex.

D-1 (Crime and Sentence Information); Compl. at ¶ 6-56.

### 3.  *The Transport to Upstate Correctional Facility on November 2, 2001*

On November 2, 2001, Defendants Richards and Marlow transported Sprau from Bare Hill

to Upstate Correctional Facility.  Defs.' 7.1 Statement at ¶¶ 34-35; Pl.'s 7.1 Statement at ¶¶ 34-35.

Prior to their departure, Defendant Richards strip frisked Plaintiff and hand scanned him for

weapons and contraband.[12]  Defs.' 7.1 Statement at ¶ 36; Richards Aff. at ¶ 6.  The van in which

Sprau was transported is divided into two sections: the front, where the driver and other escorting

officers sit, and the rear, where the inmate sits during the trip.  Defs.' 7.1 Statement at ¶ 38; Pl.'s

7.1 Statement at ¶ 38.  The front section is separated from the rear section by a metal screen or

cage and a plexiglass shield.  *Id.*  The rear section of the van has three rear seats, located one

behind the other.  *Id.*  After his strip frisk, Plaintiff was placed in mechanical restraints in the

second or third rear seat from the front.  *Id.*

     The Officers then drove Sprau to the Sallyport of Bare Hill where Officer Richards picked

up, loaded, and holstered a revolver.[13]  Defs.' 7.1 Statement at ¶ 39; Richards Aff. at ¶ 8; Pl.'s 7.1

Statement at ¶ 39.  The Officers rode with Sprau to the front of the Administration Building at Bare

Hill, where Officer Marlow dropped off paperwork to the watch commander while Officer

Richards remained in the passenger seat.  Defs.' 7.1 Statement at ¶ 40; Richards Aff. at ¶ 9;

Marlow Aff. at ¶ 10-11.  Upon admittance to the facility, Officers Marlow and Richards turned

Sprau over to Upstate's officers.  Defs.' 7.1 Statement at ¶ 43, App., Ex. D-18 (Itinerary).  That

same date, Sprau was seen as an incoming draft by medical staff.  He denied chronic medical

problems or need for medications, discussed his allergy to milk, and requested to see a psychiatrist

due to his insomnia and recurring nightmares.  Defs.' 7.1 Statement at ¶ 44; App., Ex. D-3 (AHR

entries for 11/2/01).

---

    [12] Sprau alleges that he was assaulted by the officer who frisked him, though he could not definitively identify whether the officer who assaulted him was Defendant Marlow or Defendant Richards.  Compl. at ¶¶ 40-45.

    [13] Plaintiff alleges that during his transport, the driver of the van continued to verbally threaten him while the escorting officer drew his revolver, pointed it at Plaintiff, and told him "this is what we got for you if one day we meet you on the street."  Compl. at ¶47.  Defendants Marlow and Richards aver that the transport took place without incident, and that at no time during the escort was Sprau punched, assaulted, or threatened.  Marlow Aff. at ¶ 18; Richards Aff. at ¶¶ 20-21.

*4. Filing of Grievances*

According to the DOCS' procedure, a grievance is to be filed within fourteen (14) days of

the incident giving rise to the grievance.  N.Y. COMP. CODES R. & REGS. tit. 7, § 701.7(a)(1);

Defs.' 7.1 Statement at ¶ 45; Pl.'s 7.1 Statement at ¶ 45. In addition to the complainant's

identifying information, "the grievance must contain a concise, specific description of the problem

and the action requested and indicate what actions the grievant has taken to resolve the complaint."

N.Y. COMP. CODES R. & REGS. tit. 7, § 701.7(a)(1)(i).  Further, the procedures for filing grievances

do not provide for personal delivery of the grievance to the Inmate Grievance Program Supervisor.

Defs.' 7.1 Statement at ¶ 54, App., Ex. D-5 (DOCS Directive 4040); Pl.'s 7.1 Statement at ¶ 54.

Pursuant to N.Y. COMP. CODES R. & REGS. tit. 7, § 701.13(a)(3), for those inmates housed in SHU,

area supervisors ensure that the completed grievances are placed in sealed envelopes and are

collected and forwarded to the IGRC office.  Defs.' 7.1 Statement at ¶ 55; Pl.'s 7.1 Statement at ¶

55.  For inmates in SHU, the "area supervisors" are block sergeants.  *Id.*

According to Thomas Eagen, Director of DOCS Inmate Grievance Program, from 2001 to

date, there is no record of any grievance having been filed by Sprau with regard to the incidents

alleged against the Defendants in this case.  Defs.' 7.1 Statement at ¶ 47; Eagen Aff., Ex. A.

A chronological recitation of the relevant correspondences exchanged follows:

▸   **November 15, 2001** — Sprau wrote to T. Ricks, Superintendent of the Upstate Correctional

Facility, claiming he had filed a grievance but did not receive any response from the Inmate

Grievance Resolution Committee (IGRC).  Defs.' 7.1 Statement at ¶ 48, App., Ex. D-2

(Sprau's Letter, dated 11/15/01);[14] Pl.'s 7.1 Statement at ¶ 48.

‣ **November 16, 2001** — Superintendent Ricks forwarded the correspondence to the Inmate Grievance Coordinator.  Defs.' 7.1 Statement at ¶ 49, App., Ex. D-2 (Ricks Memo, dated 11/16/01).  That same date, Defendant Tara Brousseau, Inmate Grievance Program Supervisor, saw Sprau on her rounds.  Defs.' 7.1 Statement at ¶ 50, App., Ex. D-19 (Brousseau Memo, dated 12/19/01); Pl.'s 7.1 Statement at ¶ 50.

‣ **November 20, 2001** — By correspondence, Sprau asked Brousseau to stop by on her rounds so that he could physically place his grievance in her hands.  Defs.' 7.1 Statement at ¶ 51; Pl.'s 7.1 Statement at ¶ 51.

‣ **November 27, 2001** — Ms. Brousseau wrote to Sprau advising him that no grievances were on file for him and that she would see him on her rounds, but that she could not accept his grievance for filing and he would have to use regular facility procedures to file his grievance. Defs.' 7.1 Statement at ¶ 52; Pl.'s 7.1 Statement at ¶ 52; Compl., Ex. D (Brousseau Memo, dated 11/27/01).

‣ **November 28, 2001** — Sprau wrote a letter to Deputy Commissioner Bernardi complaining that his grievances had not been received and that the IGRC staff didn't make rounds so that he was unable to put his grievance in their hands.  Defs.' 7.1 Statement at ¶ 57, Eagen Aff., Ex. B (Sprau's Letter, dated 11/28/01); Pl.'s 7.1 Statement at ¶ 57.

‣ **November 29, 2001** — Brousseau saw Sprau on her rounds.  Defs.' 7.1 Statement at ¶ 50; Pl.'s 7.1 Statement at ¶ 50.

---

[14] In his letter, Sprau explains that he wished to grieve certain incidents that took place while he was housed at Bare Hill, but fearing for his life, he failed to file a grievance while at Bare Hill.  Defs.' 7.1 Statement, App., Ex. D-2.

▸ **December 7, 2001** — Defendant Brousseau again wrote to Sprau, advising him that he had to use the regular facility procedures to file a grievance, that she would not accept personal delivery of his grievance while on her rounds, and that as on December 7, 2001, no grievance had been received from him. Defs.' 7.1 Statement at ¶ 53, App., Ex. D-20 (Brousseau Memo, dated 12/7/01); Pl.'s 7.1 Statement at ¶ 53.

▸ **December 10, 2001** — Brousseau saw Sprau on her rounds. Defs.' 7.1 Statement at ¶ 50; Pl.'s 7.1 Statement at ¶ 50.

▸ **December 26, 2001** — Thomas Eagen responded to Sprua's November 28th letter on behalf of Deputy Commissioner Bernardi explaining that IGRC staff do make rounds but do not accept grievances for filing and that Plaintiff should use the regular procedure. Eagen Aff., Ex. B (Eagen Letter, dated 12/26/01).

▸ **January 4, 2002** — Plaintiff wrote directly to Mr. Eagen, accusing the IGP Supervisor of being deceptive and a liar, among other things. Defs.' 7.1 Statement at ¶ 59; Eagen Aff., Ex. B (Sprau's Letter, dated 1/4/02); Pl.'s 7.1 Statement at ¶ 59.

▸ **February 1, 2002** — Mr. Eagen responded to Sprau's January 4th letter informing Sprau, again, that his grievance would not be picked up by IGRC staff and that he should utilize regular procedures for filing his grievance. Defs.' 7.1 Statement at ¶ 60; Eagen Aff., Ex. B (Eagen Letter, dated 2/1/02); Pl.'s 7.1 Statement at ¶ 60.

▸ **February 5, 2002** — Plaintiff sent another letter to Mr. Eagen complaining about the way correction officers picked up grievances and mail. Defs.' 7.1 Statement at ¶ 63; Eagen Aff., Ex. B (Sprau Letter, dated 2/5/02); Pl.'s 7.1 Statement at ¶ 63.

▸ **February 6, 2002** — Sprau wrote to Commissioner Goord complaining about Mr. Eagen's

February 1st letter.  Defs.' 7.1 Statement at ¶ 61; Eagen Aff., Ex. B (Sprau Letter, dated 2/6/01);

Pl.'s 7.1 Statement at ¶ 61.

▸ **February 27, 2002** — Deputy Commissioner Bernardi responded on behalf of Commissioner

Goord, with regard to Sprau's February 6th letter, advising Sprau to utilize the facility

procedure to submit his grievance.  Defs.' 7.1 Statement at ¶ 62; Eagen Aff., Ex. B (Bernardi

Letter, dated 2/27/02); Pl.'s 7.1 Statement at ¶ 62.

▸ **February 28, 2002** — Mr. Eagen responded to Sprau's February 5th letter explaining that lock

boxes are not required and that Plaintiff should submit his grievance using facility procedures.

Defs.' 7.1 Statement at ¶ 64; Eagen Aff., Ex. B (Eagen Letter, dated 2/28/02); Pl.'s 7.1

Statement at ¶ 64.

▸ **March 4, 2002** — Sprau again wrote to Deputy Commissioner Bernardi alleging that someone

was tampering with his correspondence.  Defs.' 7.1 Statement at ¶ 65; Eagen Aff., Ex. B

(Sprau Letter, dated 3/4/02); Pl.'s 7.1 Statement at ¶ 65.

▸ **March 12, 2002** — Mr. Eagen responded to Sprau's March 4th letter on behalf of Deputy

Commissioner Bernardi, and noted that, as of March 11, 2002, Sprau had not submitted a

grievance for processing, after being advised to do so, and again advised Plaintiff that he

should submit his grievance in accordance with facility procedures.  Defs.' 7.1 Statement at

¶ 66; Eagen Aff., Ex. B (Eagen Letter, dated 3/12/02).

## II.  DISCUSSION

### A.  Summary Judgment Standard

Pursuant to FED. R. CIV. P. 56(c), summary judgment is appropriate only where "there is no

genuine issue as to any material fact and . . .  the moving party is entitled to judgment as a matter

of law."  The moving party bears the burden to demonstrate through "pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any," that there is no genuine issue of material fact.  *F.D.I.C. v. Giammettei*, 34 F.3d 51, 54 (2d Cir. 1994) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).  "When a party has moved for summary judgment on the basis of asserted facts supported as required by [Federal Rule of Civil Procedure 56(e)] and has, in accordance with local court rules, served a concise statement of the material facts as to which it contends there exist no genuine issues to be tried, those facts will be deemed admitted unless properly controverted by the nonmoving party."  *Glazer v. Formica Corp.*, 964 F.2d 149, 154 (2d Cir. 1992).

To defeat a motion for summary judgment, the non-movant must "set forth specific facts showing that there is a genuine issue for trial," and cannot rest on "mere allegations or denials" of the facts submitted by the movant.  Fed. R. Civ. P. 56(e); *see also Scott v. Coughlin*, 344 F.3d 282, 287 (2d Cir. 2003) ("Conclusory allegations or denials are ordinarily not sufficient to defeat a motion for summary judgment when the moving party has set out a documentary case."); *Rexnord Holdings, Inc. v. Bidermann*, 21 F.3d 522, 525-26 (2d Cir. 1994).  To that end, sworn statements are "more than mere conclusory allegations subject to disregard . . . they are specific and detailed allegations of fact, made under penalty of perjury, and should be treated as evidence in deciding a summary judgment motion" and the credibility of such statements is better left to a trier of fact.  *Scott v. Coughlin*, 344 F.3d at 289 (citing *Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1995) and *Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir. 1983)).

When considering a motion for summary judgment, the court must resolve all ambiguities and draw all reasonable inferences in favor of the non-movant.  *Nora Beverages, Inc. v. Perrier*

12

*Group of Am., Inc.*, 164 F.3d 736, 742 (2d Cir. 1998).  "[T]he trial court's task at the summary

judgment motion stage of the litigation is carefully limited to discerning whether there are any

genuine issues of material fact to be tried, not to deciding them.  Its duty, in short, is confined at

this point to issue-finding; it does not extend to issue-resolution."  *Gallo v. Prudential Residential*

*Servs., Ltd. P'ship*, 22 F.3d 1219, 1224 (2d Cir. 1994).  Furthermore, where a party is proceeding

*pro se*, the court must "read [his or her] supporting papers liberally, and . . . interpret them to raise

the strongest arguments that they suggest."  *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994),

*accord*, *Soto v. Walker*, 44 F.3d 169, 173 (2d Cir. 1995).  Nonetheless, mere conclusory

allegations, unsupported by the record, are insufficient to defeat a motion for summary judgment.

*See Carey v. Crescenzi*, 923 F.2d 18, 21 (2d Cir. 1991).

### B.  Fourteenth Amendment Due Process Claims

Plaintiff claims that he was denied due process in the disciplinary hearing that occurred on

October 24, 2001, and in the appeal therefrom.  Specifically, Plaintiff alleges (1) that Hearing

Officer Gonyea was biased and had predetermined Plaintiff's guilt, as evidenced, in Plaintiff's

estimation, from the fact that Gonyea's name appears on a number of documents related to the

October 18th incident, *i.e.*, Memo written to Defendant Gonyea from Defendant Rocque, dated

October 18, 2001, stating Sprau was escorted, without incident, from his cube to SHU;[15] (2) that

the Hearing Officer considered evidence outside the misbehavior report, in particular, the

testimony of Officer Columbe that Officer Stubbs had sustained broken fingers in the struggle; (3)

---

[15] This argument was not raised in Plaintiff's original appeal from the disciplinary determination, nor was it set forth in his Complaint filed with this Court.  Previously, in his appeal to Defendant Murphy, Plaintiff alleged that the Hearing Officer's impartiality was "suggested" by his reliance on the information regarding Officer's Stubbs' broken fingers.  Defs.' 7.1 Statement, App., Ex. D-12.

the weapon was never produced at the hearing;[16] and, (4) Gonyea provided an inadequate written disposition of the charges.  With respect to the appeal, Plaintiff asserts that Defendant Murphy violated Plaintiff's due process rights because he affirmed Plaintiff's disciplinary conviction despite his knowledge of the above-referenced due process violations.

As noted in the statement of material facts, based upon the incident on October 18th, Plaintiff was later charged, convicted, and sentenced in state court for the crime of promoting prison contraband in the first degree.  Plaintiff's disciplinary disposition was 12 months in SHU with loss of privileges and recommended loss of 12 months good time.  Defendants assert that based upon *Heck v. Humphrey*[17] and *Edwards v. Balisok*[18] Plaintiff is barred from pursuing this claim because the underling disciplinary determination as well as the ensuing criminal conviction have not been overturned nor set aside.  Further, Defendants allege that Plaintiff has not alleged that he suffered an "atypical and significant hardship" which implicates a liberty interest and that the record establishes that Plaintiff was not denied due process.

### 1.  Application of Heck v. Humphrey

In *Heck v. Humphrey*, 512 U.S. 477 (1994), the Supreme Court held that a § 1983 action seeking damages is not cognizable if a decision in favor of the plaintiff would necessarily invalidate a criminal conviction or sentence unless the conviction had been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal, or called into question by a federal *habeas* court.  *Heck*, 512 U.S. at 486-88.  The *Heck* Court directed that "when a state

---

[16] This ground also was not raised in Plaintiff's appeal to Defendant Murphy.  Rather, Plaintiff alleged that the weapons charge was not "supported by any evidence except an officer's opinion."  Defs.' 7.1 Statement, App., Ex. D-12.

[17] 512 U.S. 477 (1994).

[18] 520 U.S. 641 (1997)

prisoner seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated." *Id*. at 487.

The Supreme Court later extended their *Heck* ruling to situations where inmates are challenging disciplinary proceedings that resulted in a loss of good time credits wherein the validity of a disciplinary or administrative sanction wold affect the length of plaintiff's confinement. *See Edwards v. Balisok*, 520 U.S. 641 (1997). However, the Second Circuit has clarified that where the challenged proceeding does not affect the overall length of the plaintiff's confinement, a §1983 action is not barred by *Heck* or *Edwards*. *Jenkins v. Haubert*, 179 F.3d 19, 27 (2d Cir. 1999).

In the within case, Plaintiff is presently serving a number of sentences including one with a minimum term of 15 years incarceration and a maximum term of life. Because of this sentence, Plaintiff is not entitled to time allowance against the term of his sentence. *See* N.Y. CORR. LAW § 803.[19] Defendants acknowledge this fact and, without directly addressing the implication of this case with respect to the application of *Heck* and its progeny, assert, without citation, that "[a]lthough Plaintiff does not earn good time credits against a life sentence, he can accumulate loss of good time credits. The loss of good time credits would be considered in the event the prisoner

---

[19] Section 803 provides, in pertinent part:

> Every person confined in an institution of the department or a facility in the department of mental hygiene serving an indeterminate or determinate sentence of imprisonment, *except a person serving a sentence with a maximum term of life imprisonment*, may receive time allowance against the term or maximum term of his sentence imposed by the court.

N.Y. CORR. LAW § 803(1)(a) (emphasis added).

were resentenced to something less than life." Dkt. No. 51, Defs.' Mem. of Law at p. 15 n.3.

At least one other court in this Circuit has addressed a factually and legally analogous situation. In *Gomez v. Kaplan*, 2000 WL 1458804 (S.D.N.Y. 2000), the court observed that because the plaintiff may not receive time allowance against the term of his sentence,

> the deprivation of good-time credit in [plaintiff's] case is meaningless. The Defendants cannot take from Plaintiff something Plaintiff does not have. For this reason, the length of [plaintiff's] confinement is not and cannot be implicated by the outcome of this action. . . . In this way [plaintiff] is governed by *Jenkins* because [plaintiff] was effectively sentenced only to segregated confinement. This becomes a pure conditions of confinement case by default.

*Id*. at * 12.

In *Gomez*, as with our case, the defendants raised the issue that time allowances, earned or lost, remains on an inmate's record, and in the event that an inmate's maximum term is reduced, the deprivation of good-time may be considered in determining the timing of his release. *Id*. In response to this argument, the court noted that, despite defendants' conjectures, the fact remained that Gomez had not been resentenced and, therefore,

> was and still is ineligible to receive time allowance against his sentence. Accordingly, the length of his sentence is wholly unaffected by this action. Neither party has suggested any reason nor is there any indication that [plaintiff] will be resentenced. Therefore, it would be entirely inappropriate to treat Plaintiff's claim as one attacking the fact or length of his confinement merely because it is conceivable, albeit a remote possibility, the he could be resentenced and the length of that as yet nonexistent sentence might be affected.

*Id*.

This Court likewise finds that this case is governed by *Jenkins*, and is not barred by *Heck* and *Edwards*, and that Sprau is not attacking the fact or length of his confinement, but rather, the conditions of his confinement. Accordingly, this Court must address the due process issues raised in Plaintiff's Complaint.

*2.  The Disciplinary Hearing*

Determining whether an inmate has received procedural due process in connection with a disciplinary proceeding involves "a two-pronged inquiry:  (1) whether the plaintiff had a protected liberty interest in not being confined in keeplock . . .; and, if so, (2) whether the deprivation of that liberty interest occurred without due process of law." *Bedoya v. Coughlin*, 91 F.3d 349, 351-52 (2d Cir. 1996) (citing *Kentucky Dep't of Corrections v. Thompson*, 490 U.S. 454, 460-61 (1989)).

In *Sandin v. Conner*, 515 U.S. 472 (1996), the Supreme Court held that for a prisoner to demonstrate that he was deprived of liberty when placed in disciplinary confinement, the prisoner must show that the disciplinary confinement that he was subjected to "imposed[d an] atypical and significant hardship on [him] in relation to the ordinary incidents of prison life." *Id*. at 484.  It is undisputed that Plaintiff was sentenced to and served 365 days of SHU confinement.  Since Sprau has provided this Court with little to no information concerning the circumstances surrounding this disciplinary confinement as it compares to confinement in the general population, we assume, *arguendo*, that Sprau has a liberty interest in not being held in disciplinary confinement for approximately 365 days, and that this interest triggered the right to due process protections in connection with his disciplinary hearing.

The minimum due process a prisoner must receive in a disciplinary context are:  (1) written notice of the charges; (2) receipt of such notice at least 24 hours before the disciplinary hearing; (3) aid of fellow inmates or staff members in defending against the charge; (4) a written statement by the fact finder as to the evidence and reasoning for any disciplinary action; and, (5) the ability to call witnesses and present documentary evidence (if institutional safety and/or correctional goals will not be jeopardized). *Foxworth v. Selsky*, 1998 WL 59448, at *1 (N.D.N.Y. Feb. 9, 2002)

(citing *Wolff v. McDonnell*, 418 U.S. 539, 563-66 (1974)).

To reiterate, Plaintiff alleges the following due process violations occurred in connection with his October 24 Disciplinary Hearing: a) that Hearing Officer Gonyea was biased and had predetermined Plaintiff's guilt, as evidenced from the fact that Gonyea's name appears on a number of documents related to the October 18th incident, *i.e.*, Memo written to Defendant Gonyea from Defendant Rocque, dated October 18, 2001, stating Sprau was escorted, without incident, from his cube to SHU; b) that the Hearing Officer considered evidence outside the misbehavior report, in particular, the testimony of Officer Columbe that Officer Stubbs had sustained broken fingers in the struggle; c) the weapon was never produced at the hearing; and, d) Gonyea provided an inadequate written disposition of the charges.  With respect to the appeal, Plaintiff asserts that Defendant Murphy violated Plaintiff's due process rights because he affirmed Plaintiff's disciplinary conviction despite his knowledge of the above-referenced due process violations.

a)      Hearing Officer Bias

Due process requires that a prison disciplinary hearing be impartial.  *Russell v. Selsky*, 35 F.3d 55, 59 (2d Cir. 1994) (citing *McKinnon v. Patterson*, 568 F.2d 930, 934 n.3 (2d Cir. 1977)). An impartial decision maker is one who does not prejudge the evidence and cannot say how he would evaluate evidence that he has not seen.  *Patterson v. Coughlin*, 905 F.2d 564, 570 (2d Cir. 1990) (citation omitted).  However, it has long been held that prison disciplinary hearing officers are not held to the same standard of neutrality as other types of adjudicators.  *See Allen v. Cuomo*, 100 F.3d 253, 259 (2d Cir. 1996) (citing, *inter alia*, *Russell v. Selsky*, 35 F.3d at 60).  Moreover, a plaintiff "must offer evidence to support the charge of impartiality or the record must indicate some impropriety."  *Beyah v. Putnam*, 885 F. Supp. 371, 374 (N.D.N.Y. 1995) (citing *Candelaria v.*

*Coughlin*, 787 F. Supp. 368, 375 (S.D.N.Y. 1992)).

Plaintiff alleges for the first time in his Opposition papers that Hearing Officer Gonyea was biased because "several person[s] had informed defendant Gonyea of this incident and he apparently had come with his mind made [up] to the hearing." Dkt. No. 54, Pl. Aff. at ¶ 22. In his Memorandum of Law, in support of this argument, Plaintiff specifically refers the Court to Exhibit D-16 to Defendants' Statement of Material Facts. Dkt. No. 53 at p. 12. We note at the outset the improperness of Plaintiff including such arguments for the first time in his opposition papers. First, this claim was not fully presented in his appeal to Defendant Murphy, and, second, such claim was not included in his Complaint.[20] However, in the interest of preventing protracted litigation caused by amendments to Plaintiff's claims, and in light of the fact that Defendants had not raised Sprau's failure to exhaust this issue, we will address the merits of these "new" arguments.[21]

In Exhibit D-16, the Court notes that Captain Gonyea was copied on the Unusual Incident Report under "Notification (Police/Other)" and that he received an escort form that states which officers escorted Plaintiff to SHU on October 18, 2001. Defs.' 7.1 Statement, App., Ex. D-16.

---

[20] The Court notes that opposition papers are not the proper vehicle to instill new causes of action or add new defendants. *See In re Private Capital Partners, Inc.*, 139 B.R. 120, 124-25 (Bankr. S.D.N.Y. 1992) (citing cases for the proposition that a plaintiff's attempt to amend his complaint by instituting new causes of action in his opposition papers to defendants' dispositive motion is in direct contravention of and amounted to an attempt to circumvent the Federal Rules of Civil Procedure, namely Rule 15(a)). The Court will not construe Plaintiff's inclusion of such arguments as a motion to amend.

[21] Defendants raised the affirmative defense of failure to exhaust administrative remedies in their Answer to the Complaint. *See* Dkt. No. 24 at ¶ 39 (Answer on behalf of Defs. Murphy, Gonyea, Rocque, Marlow, and Richards); Dkt. No. 30 at ¶ 42 (Answer on behalf of Def. Brousseau). By their Motion, Defendants only challenge Plaintiff's exhaustion efforts with regard to his claims of excessive force against Defendants Rocque, Marlow, and Richards. Dkt. No. 51, Mem. of Law at pp. 22-24. Defendants, however, did not file a Reply to Plaintiff's Opposition and assert that Plaintiff failed to exhaust his administrative remedies with regard to his due process claims, as it would have been within their right to do so.

There is no indication that Captain Gonyea received any further information.

New York State regulations provide:

> The person appointed to conduct the superintendent's hearing shall be either the superintendent, a deputy superintendent, captain or commissioner's hearing officer employed by the department and the superintendent may include or designate more employees and the preceding. The following persons shall not be appointed to conduct the proceeding: *a person who actually witnessed the incident; a person who was directly involved in the incident; the review officer who reviewed the misbehavior report, or a person who has investigated the incident.*
> N.Y. COMP. CODES R. & REGS. tit. 7, § 254.1 (emphasis added).

There is no indication that Captain Gonyea falls within any of the categories of proscribed persons who should not hear a disciplinary matter under the state regulations. Moreover, Plaintiff has offered this Court nothing other than conclusory allegations of bias, and has not met his burden of offering some evidence to support his allegations. Finally, this Court has reviewed the hearing transcript in its entirety and finds no evidence of bias or prejudgment. Thus, Plaintiff's due process claim on the basis of Hearing Officer bias and/or predetermination is without merit.

b)    Evidence Outside the Misbehavior Report

Plaintiff alleges that the Hearing Officer considered evidence outside the misbehavior report and, thus, Plaintiff was not provided the 24 hour notice of the charges against him. More specifically, Plaintiff complains that Hearing Officer Gonyea considered the testimony of Officer Columbe regarding the injuries that Officer Stubbs received as a result of the October 18th incident, namely, two broken fingers.

Initially the Court notes that the information Sprau complains about, that is Stubbs' injuries, do not relate to the basis for the Hearing Officer's finding of guilt on the weapons charge. In fact, Plaintiff pled guilty to violent conduct, interference with employee, refusing a direct order, and refusing a search or frisk. Thus, any information regarding those charges was considered with

respect to an appropriate penalty.[22]   Moreover, the hearing disposition form clearly reflects that this

information was not the basis for any of the findings of guilt, but rather, the penalty.  Plaintiff was

only found guilty of the violations specified in the misbehavior report dated October 18, 2001.  The

Court finds no evidence to suggest that Plaintiff was not on notice of the charges against him, or

that he was not afforded the necessary advance notice of those charges, or that charges other than

those contained in the misbehavior report were acted upon by the Hearing Officer.  Thus, Sprau's

due process claims alleged on the basis of reliance of evidence outside the record lacks merit.

      c)      <u>Failure to Produce the Weapon</u>

      The amount of evidence needed in the prison disciplinary hearing context to satisfy due

process concerns is minimal.  "The Federal Constitution does not require evidence that logically

precludes any conclusion but the one reached by the [hearing officer]."  *Superintendent v. Hill*, 472

U.S. 445, 457 (1985).  Rather, in determining matters of sufficiency, the court's function is to

determine whether there is  "some evidence to support the findings made in the disciplinary

hearing."  *Id*.  Plaintiff has raised, for the first time in his Opposition to Defendants' Motion, the

assertion that he was denied due process because the weapon was not produced to substantiate the

weapons charge.  *See supra* notes 20 & 21.  In his disciplinary appeal papers Plaintiff alleged that

the Hearing Officer relied solely on an officer's "opinion" to substantiate this charge.  This Court

has reviewed the transcript and notes that, in fact, Officer Columbe's testimony was quite clear and

unequivocal as to his observation of the item that Plaintiff attempted to secret, and dispose of

before the officers could stop him.  Plaintiff was given a full and fair opportunity to cross-examine

Officer Columbe which Plaintiff availed himself of.  Based upon the record before this Court, we

---

[22] Plaintiff has not alleged the penalty was unfair or excessive.

find that the record clearly substantiates the finding of guilt on the weapons charge.  Thus, Sprau's

due process claims stemming from the failure to produce the weapon are meritless.

        d)    <u>Written Disposition of the Charges</u>

It is undisputed that Plaintiff is entitled to a written statement of the Hearing Officer's

findings and the basis for his action.  In this case Plaintiff summarily alleges that the written

findings were inadequate, but does not state the basis for this conclusory allegation.  This Court has

reviewed the Hearing Officer's disposition record and finds that it fully complies with the

fundamental principles of due process.  Clearly, it advises Plaintiff of the charges and the

disposition on each, the penalty, the evidence relied upon for the findings of guilt, and the

information considered in assessing an appropriate penalty.  As such, Plaintiff's due process claims

based upon the inadequacy of the written disposition is without merit.

        e)    <u>The Appeal</u>

Lastly, Plaintiff alleges that Defendant Murphy violated his due process rights when he

affirmed the disciplinary findings and penalty because Murphy was aware of the due process

violations that Plaintiff has set forth in this action.  As noted above, there are at least two claims

that were not presented to Defendant Murphy, namely, Sprau's argument that Gonyea was biased

due to the reference to his name in papers relating to the October 18th incident, and Sprau's claim

that the weapon was never produced at the hearing.  However, Plaintiff makes no allegations of

wrong doing against Defendant Murphy or otherwise explains to this Court why Murphy's

affirmance of the disciplinary determination was wrongful.  As noted above, this Court found no

due process violations in the claims raised by Plaintiff, and, accordingly, this Court finds that

Plaintiff has failed to offer any support for his conclusory allegation that Defendant Murphy

violated Plaintiff's due process rights in the course of his appeal.

For all of the forgoing reasons, this Court recommends that Defendants' Motion for Summary Judgment on the due process claims be **granted**.

### C. First Amendment Claim—Interference with Grievances

Plaintiff claims that Defendant Brousseau violated his First Amendment when she refused to file Plaintiff's grievance, and, in doing so, she violated his right to petition the government for redress.  As with his due process claims, Plaintiff has attempted to expand his First Amendment claim in his Opposition papers to include allegations that Brousseau had an obligation, pursuant to New York regulations, to assist Plaintiff in preparation of his grievance and failed to do so. Defendants argue that Plaintiff fails to set forth a claim against Defendant Brousseau because Plaintiff has failed to make a showing of personal involvement by Brousseau in the alleged constitutional violation.

"While there is a First Amendment right of meaningful access to the courts and a right to petition the government for redress ... inmate grievance procedures are not required by the Constitution and therefore a violation of such procedures does not give rise to a claim under §1983. *Cancel v. Goord*, 2001 WL 303713, at *3 (S.D.N.Y. Mar. 29, 2001) (citing *Justice v. Coughlin, III*, 1996 U.S. Dist. LEXIS 15341, at *11 (N.D.N.Y. July 1, 1996)).  "Therefore, the refusal to process an inmate's grievance or failure to see to it that grievances are properly processed does not create a claim under § 1983." *Id*.  Finally, faced with a situation where a grievance is not timely processed at one level, the inmate has the right under N.Y. COMP. CODES R. & REGS. tit. 7, § 701.8, to appeal directly to the next level in the process.

The record reveals a number of proactive efforts made by Brousseau to direct Plaintiff to

follow the proper procedures for filing a grievance.  For whatever reason, instead of following the advice given to him, Plaintiff chose to engage in a written dialogue with various individuals at Upstate and at DOCS offices in Albany.  Likewise, on the record before this Court, the Court finds that Brousseau was under no obligation to assist Plaintiff in preparation of his grievance nor receive said grievance in person, or that such a request was ever made by Plaintiff and denied or ignored by Brousseau.  Accordingly, for the forgoing reasons, this Court will recommend that the First Amendment claims asserted against Brousseau be **dismissed**.

### D.  Exhaustion of Eighth Amendment Claims

Defendants allege that Plaintiff failed to exhaust his administrative remedies and, thus, his claims for use of force are barred by the Prison Litigation Reform Act (PLRA) and *Porter v. Nussle*, 534 U.S. 516 (2002).  Plaintiff argues that Defendants are estopped from asserting this claim because they intentionally interfered in his access to the grievance process.

The PLRA, 42 U.S.C. § 1997e(a), requires that for actions brought by prisoners under 42 U.S.C. § 1983, the inmate must first exhaust his or her administrative remedies.  The Supreme Court has held that the PLRA requires administrative exhaustion even where the grievance process does not permit award of money damages and the prisoner seeks only money damages, provided the grievance tribunal has the authority to take some responsive action.  *See Thomas v. Wright*, 2002 WL 31309190, at *5 (N.D.N.Y. Oct. 11, 2002) (Sharpe, M.J.) (citing *Booth v. Churner*, 531 U.S. 731 (2001)).

In New York State, the administrative remedies consist of a three-step review process.  First, a grievance is submitted to the Inmate Grievance Program Resolution Committee (IGRC), a committee comprised of inmates and facility employees.  The IGRC's task is primarily to

24

investigate and review the submitted grievance.  The IGRC then issues a written determination.

The inmate is afforded an opportunity to appeal this determination to the superintendent.  Second,

if the IGRC decision is appealed, the superintendent of the facility reviews the IGRC's

determination and issues a decision.  Finally, if the superintendent's decision is appealed, the

Central Office Review Committee (CORC) makes the final administrative determination.  *See*

N.Y. Comp. Codes R. & Regs. tit. 7, § 701.7.

Only upon exhaustion of these three levels of review may a prisoner seek relief pursuant to

§ 1983 in federal court.  *Reyes v. Punzal*, 206 F. Supp. 2d 431, 432 (W.D.N.Y. 2002) (citing, *inter

alia*, *Sulton v. Greiner*, 2000 WL 1809284, at *3 (S.D.N.Y. Dec. 11, 2000)).  It is well settled that

a Plaintiff must "go beyond the first step" and exhaust his grievance through the final stages of the

administrative process.  *Saunders v. Goord*, 2002 WL 1751341, at *2 (S.D.N.Y. July 29, 2002).

Further, it is clear that a Plaintiff must exhaust these remedies before his complaint is filed in

federal court.  *Id*.

It is clear that Plaintiff did not file a grievance with respect to his Eighth Amendment

claims asserted in this civil action.  In fact, both parties submitted a letter, written by Plaintiff,

dated March 21, 2002, stating that as of that date no grievance was filed by Plaintiff at Upstate.

There are no allegations that Plaintiff made any later attempt to grieve the events giving rise to the

claims in this action.

In addition, it is clear to this Court that Plaintiff's ability to file a grievance was not

impeded in any way by the Defendants, or any other official at the correctional facilities.[23]  Rather,

---

[23] The Court notes that none of the recent Second Circuit decision regarding an inmate's exhaustion of administrative remedies apply in this case.  *See Abney v.McGinnis*, 2004 WL 1842647 (2d Cir. Aug. 18, 2004); *Hemphill v. New York*, 2004 WL 1842658 (2d Cir. Aug. 18, 2004); *Johnson v. Testman*, 2004 WL 1842669 (2d Cir.

Plaintiff was advised, on a number of occasions by a variety of individuals, how to file a grievance. Further, assuming *arguendo* that Plaintiff had filed such a grievance, when it was not timely processed, his right under § 701.8, and his obligation under the PLRA, was to appeal to the next level in the grievance process. It is undisputed that Plaintiff did not take such action. Thus, this Court must find that Plaintiff has failed to exhaust his administrative remedies with respect to the use of force claims contained in his Complaint. Accordingly, this Court will recommend that the claims the claims against Defendants Rocque, Marlow, and Richards pursuant to the Eighth Amendment be **dismissed**.

**WHEREFORE**, based on the above, it is hereby

**RECOMMENDED**, that the Defendants' Motion for Summary Judgment (Dkt. No. 51) be **GRANTED** and Plaintiff's entire Complaint be **DISMISSED**; and it is further,

**ORDERED**, that the Clerk of the Court serve this Report-Recommendation and Order on the parties.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have ten (10) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT TO THE ASSIGNED DISTRICT JUDGE WITHIN TEN (10) DAYS WILL PRECLUDE APPELLATE REVIEW**. *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72, 6(a), 6(e).

SO ORDERED.

---

Aug. 18, 2004); *Giano v. Goord*, 2004 WL 1842652 (2d Cir. Aug. 18, 2004).

September 29, 2004
Albany, New York

RANDOLPH F. TREECE
United States Magistrate Judge